# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RON FENN,

    Plaintiff,

vs.                                                                              No. 2:18-cv-00634 WJ-GW

CITY OF TRUTH OR CONSEQUENCES,
MICHAEL APODACA, Truth or Consequences
Police Captain individually acting under the color of Law,
LEE ALIREZ, Truth or Consequences Police Chief individually
Acting under color of state law, and DANIEL HICKS,
Director of Spaceport America,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART TRUTH OR CONSEQUENCES DEFENDANTS' MOTION TO DISMISS and GRANTING DEFENDANT DANIEL HICKS' MOTION TO DISMISS

THIS MATTER comes before the Court upon the Truth or Consequences Defendants' (Lee Alirez's, Michael Apodaca's, and City of Truth or Consequences') Motion for Partial Dismissal of Plaintiff's Complaint, filed August 2, 2018 **(Doc. 13)**, and Defendant Daniel Hicks' Motion to Dismiss, filed August 28, 2018 **(Doc. 18)**. Having reviewed the parties' pleadings and the relevant law, the Court finds that Defendants' motions are well-taken and, therefore, are **GRANTED IN PART**.

## BACKGROUND

Plaintiff Ron Fenn frequented a senior center at 301 S. Foch St., Truth or Consequences, New Mexico. The senior center was converted to other uses, and was leased out to Spaceport America, a New Mexico public agency, for use as a visitor center. Plaintiff publicly protested the conversion of the senior center.

On June 26, 2015, an employee of Geronimo Trail Scenic Byway, also located at 301 S. Foch St, asked police that Plaintiff "be trespassed" from 301 S. Foch. St. because Plaintiff "had been offensive to her, and that she felt unsafe around Plaintiff." **Comp**. ¶ 11-12.

On that same day, Rosemary Bleth, CEO for Follow the Sun Tours, located at 301 S. Foch. St., contacted police to report that Plaintiff was improperly soliciting. Ms. Bleth requested a trespass authorization against Plaintiff. When police arrived, the manager, Mr. Bleth, told officers he had observed Plaintiff walking around the inside of center engaged in conversation with an unidentified woman. Plaintiff requested a pen and paper to jot down her email address. Mr. Bleth alleged that Plaintiff handed a business card to the woman that said "Spaceport Tour video Memory services, and that Plaintiff asked for a $10 donation for the videos. Mr. Bleth told officers that Plaintiff had been a very vocal opponent of the opening of the Spaceport visitor center.

Plaintiff alleges that a "trespass authorization" was issued at the request of the Rosemary Bleth, a "representative" of Spaceport America, restricting Plaintiff from 301 S. Foch St. That same day, Captain Apodaca and Chief Alirez attempted to serve the trespass authorization on Mr. Fenn. Mr. Fenn took receipt of the trespass form. Chief Alirez received a copy of the business card Plaintiff had been handing out, which stated "help save our Lee Belle Johnson Senior Recreation center."

Chief Alirez questioned Plaintiff whether he had a business license. Plaintiff was prosecuted for conducting business without a license and convicted on September 9, 2015.

On October 10, 2016, Linda DeMarino contacted the police department and reported Plaintiff had entered 301 S. Foch St. and was making "obnoxious comments." Captain Apodaca responded. Ms. DeMarino informed Captain Apodaca that Plaintiff had been "carrying on" about

the building no longer being used as a senior center. Ms. DeMarino filmed Plaintiff's behavior. There is no allegation that Cpt. Apodaca took any action.

On May 5, 2017, Captain Apodaca responded to a call by John Muenster, a volunteer of Geronimo Trail Scenic Byway center, about Plaintiff being on the property in violation of trespass orders. Plaintiff was putting up posters on a counter inside the center. Captain Apodaca told Plaintiff that he could "put up his propaganda and stay… but not to harass any visitors." Mr. Muenster was concerned that expensive items kept in the center could be damaged or stolen. Ms. Bleth notified the officer that she was interested in a criminal trespass order against Mr. Fenn to prevent him from entering the location.

On May 11, 2017, Defendant Hicks, CEO of Spaceport America requested a trespass order from Chief Alirez based on prior incidents as preventative measure. Chief Alirez drove 75 miles to the officers of Spaceport America for Defendant Hicks' signature that day. Chief Alirez then met with Plaintiff on May 12, 2017 to serve the trespass order. Plaintiff received it but refused to sign it.

On June 4, 2017, Larena Miller contacted the police department to report Plaintiff Fenn inside 301 S. Foch St. Sgt. Baker responded and found Mr. Fenn inside the "common use area of the building," in the area housing a satellite library. Sgt. Baker and Chief Alirez told Plaintiff to leave, and Plaintiff refused. There is no allegation whether Plaintiff was made to leave or whether any further action as taken.

Chief Alirez met with Plaintiff on June 13, 2017 in his office, and offered to hold the newest citation in abeyance as long as Plaintiff Fenn had no further violations at 301 S. Foch St.

On June 18, 2017, Officer Ontiveros was dispatched to another trespassing call at 301 S. Foch St. Plaintiff was "within the common area of the areas he had previously been trespassed

from." Plaintiff said he was not trespassing but was protesting. Both Officer Ontiveros and Chief Alirez ordered Plaintiff to leave, and he refused. Chief Alirez then arrested Plaintiff and a criminal complaint was filed against him for Criminal Trespass pursuant to NMSA § 30-14-1(C).

In the criminal case, Plaintiff filed a motion to dismiss for failure to establish essential elements of the offense. A hearing was held, and the motion to dismiss was denied. The criminal case was dismissed without prejudice (*Nolle Proseque*) on October 11, 2017.

Plaintiff filed this complaint alleging (1) First Amendment Retaliation; (2) Malicious Prosecution and Abuse of Process; and (3) supervisory and *Monell* liability. The Truth or Consequences Defendants seek dismissal of Plaintiff's First and Third causes of action on the basis of qualified immunity. Moreover, Defendant Hicks seeks dismissal of the First Amendment claim on similar grounds.

Because some arguments were either not addressed by Plaintiff in his response or were raised for the first time by the T or C Defendants in their reply brief, the Court ordered supplemental briefing from Plaintiff.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court

should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

Plaintiff alleges that Defendants violated his free speech rights under the First Amendment. The free speech rights protected by the First Amendment include the right to petition the government for redress of grievances. *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Governmental retaliation for exercising one's freedom of speech constitutes infringement of that freedom. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). To state a First Amendment retaliation claim, a plaintiff must allege "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015), *quoting Nielander v. Bd. of Cty. Comm'rs,* 582 F.3d 1155, 1165 (10th Cir. 2009).

### I.     First Amendment Retaliation Claim against Defendants Apodaca and Alirez (Count I).

Plaintiff alleges that Defendants Apodaca and Alirez violated his First Amendment right to free speech by issuing trespass notices to him and ordering him to vacate 301 S. Foch St. Plaintiff also alleges that Defendant Alirez arrested him, in retaliation for his protest about the

alleged misuse of 301 S. Foch St.  Plaintiff also frames this case as a retaliatory prosecution case in violation of the First Amendment.  *See* **Doc. 17, p. 4-6**.

The Truth or Consequences Defendants seek dismissal of the First Amendment Retaliation claim on qualified immunity grounds.  Defendants argue that these claims should be dismissed under qualified immunity because (1) the officers had at least arguable probable cause to arrest Plaintiff, and (2) the law was not clearly established that arresting and prosecuting Plaintiff where there was probable cause to do so would constitute First Amendment retaliation.  In its discretion, the Court addresses only the second prong of qualified immunity, which is dispositive.  *Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009).

     A.     **General Law on Clearly Established Prong and Arguable Probable Cause.**

When a Plaintiff alleges an unlawful retaliatory arrest in violation of the First Amendment, the First and Fourth Amendment analyses overlap to some extent.  *See Sause v. Bauer*, 138 S. Ct. 2561, 2563, 201 L. Ed. 2d 982 (2018) ("When an officer's order to stop praying is alleged to have occurred during the course of investigative conduct that implicates Fourth Amendment rights, the First and Fourth Amendment issues may be inextricable.").  The Court agrees with Defendants that for a First Amendment retaliatory arrest or prosecution case, it must analyze whether there was arguable probable cause. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 931–32 (10th Cir. 2015) (In First Amendment Retaliation claim, Plaintiff must show lack of probable cause for retaliatory *prosecution* cases, and law not clearly established that officers violate First Amendment where there is probable cause for *arrests*), *citing Hartman v. Moore,* 547 U.S. 250, 265–66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (plaintiff in first amendment retaliatory prosecution case must show lack of probable cause); *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (in retaliatory

6

arrest claim for violation of First Amendment, analyzing whether there was a lack of probable cause or arguable probable cause).

"A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted); *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017) (unpublished). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ––– U.S. –––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, ––– U.S. –––, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

To determine whether an officer violated clearly established law, the Court looks to whether there was "arguable probable cause" for an arrest. *Garcia v. Escalante*, 678 F. App'x 649, 655 (10th Cir. 2017). Arguable probable cause exists where "a reasonable police officer in the same circumstances . . . and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).

Therefore, to the extent this is a retaliatory arrest or prosecution case, Plaintiff must show the absence of arguable probable cause.

7

## B. Defendant Alirez had arguable probable cause to arrest or prosecute Plaintiff.

The Court agrees with Defendants that a reasonable officer could have reasonably believed that probable cause existed for criminal trespass in light of well-established law. The New Mexico Criminal Trespass Statute (NMSA § 30-14-1) provides:

> C. Criminal trespass also consists of knowingly entering or remaining upon lands owned, operated or controlled by the state or any of its political subdivisions knowing that consent to enter or remain is denied or withdrawn by the custodian thereof.

NMSA § 30-14-1 (C). Here, Defendant Hicks revoked consent for Plaintiff to be on the premises and signed a trespass notice.[1] Defendant Hicks was the CEO of Spaceport America, which leased a portion of 301 S. Foch St. as a visitor center. A reasonable officer would believe that Defendant Hicks was a custodian of 301 S. Foch St. who could revoke Plaintiff's permission to be on the property. Moreover, Plaintiff was hand-delivered the trespass notice by Defendants. Finally, an officer observed Plaintiff at the Spaceport America Visitors Center and was repeatedly warned to leave and he refused. Therefore, based on Plaintiff's allegations, a reasonable officer would believe that Plaintiff trespassed, because (1) the custodian revoked Plaintiff's authorization to be on the premises, (2) officers gave notice to Plaintiff that he must vacate, and (3) Plaintiff was observed by an officer at 301 S. Foch St. and he refused to leave.

Plaintiff argues that Defendant Hicks was not the custodian of 301 S. Foch St., which Spaceport America leased, and therefore could not revoke Plaintiff's permission to be there. The Court finds no support for this position in the New Mexico statutes or case law. Defendant Hicks was the CEO of Spaceport America, which leased the property for its visitor center, and therefore is likely the "custodian" permitted to revoke. Nevertheless, even if mistaken, the Court finds that

---

[1] To the extent Plaintiff argues that Ms. Bleth previously signed a trespass notice on behalf of Spaceport America, Plaintiff does not allege that the officers arrested or prosecuted Plaintiff based on that prior trespass notice. Therefore, Ms. Bleth's trespass notice is not relevant to the arguable probable cause analysis.

a reasonable officer would believe that Defendant Hicks had authority to revoke Plaintiff's permission to be on the property.

Plaintiff also argues that there was no probable cause, because he did not do anything to warrant being excluded from the visitor center by the custodian. Initially, the Court notes that Plaintiff did not cite any law on when probable cause for trespass is valid in the First Amendment context. Plaintiff does not cite to case law showing when a trespass statute can be enforced or argue that the trespass statute is overbroad. This falls short of Plaintiff's burden under the clearly established prong.

Nevertheless, as explained below, the issue here is whether it is clearly established that an officer, *assuming retaliatory animus*, would violate Plaintiff's First Amendment rights by arresting him where there is probable cause. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 931-32 (10th Cir. 2015) (regardless of officer's retaliatory motives, it was not clearly established that officer could not arrest plaintiff when he reasonably believed he had probable cause); *Moral v. Hagen*, 553 F. App'x 839, 840 (10th Cir. 2014) (unpublished) (evidence of retaliatory motive not enough to overcome qualified immunity in first amendment retaliatory arrest case, where there was probable cause), *citing Reichle v. Howards,* —— U.S. ——, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). Here, Plaintiff fails to cite to any case that indicates that a reasonable officer would believe that he did not have probable cause to arrest Plaintiff based on the First Amendment.

**C.** **Law was not Clearly Established as to Arrest and Prosecution**.

Defendants argue that it was not clearly established at the time of Plaintiff's arrest in June 2017 that an arrest supported by probable cause could constitute First Amendment Retaliation. The Court agrees.

1. <u>Plaintiff did not carry heavy burden of citing to clearly established law</u>.

Initially, the Court notes that Plaintiff failed to carry his burden of citing to any clearly established law that states that he has a right to be free from retaliatory arrest or prosecution where there is arguable probable cause. On that basis alone, Plaintiff failed to carry his heavy burden. *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (plaintiff failed burden under qualified immunity by failing to cite to any Supreme Court or Tenth Circuit opinion that would indicate right was clearly established); *Gutierrez v. Cobos*, 841 F.3d 895, 907 (10th Cir. 2016) (plaintiff failed to meet burden where they did not cite to legal authority for clearly established law or use term "clearly established"); *citing Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (same); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013); *Hedger v. Kramer,* 2018 WL 1082983, at *5 (10th Cir. 2018) ("The failure to identify [] a case is fatal to the claim.").

Plaintiff argues that *Reichle v. Howards*, 132 S.Ct. 2088, 2083 (2012), clearly established that an arrest supported by probable cause could give rise to a First Amendment Violation. **Doc. 17**, **p. 10-11**. But in that case, the United States Supreme Court expressly declined to hold whether a First Amendment retaliatory arrest claim could sound where the arrest was supported by probable cause and held instead that it was not clearly established that an arrest supported by probable cause could violate the First Amendment.

2. <u>Law otherwise indicates that right is not clearly established</u>. Alternatively, the Court agrees with Defendants that the law is not clearly established that an officer would violate Plaintiff's First Amendment right against retaliatory arrest or prosecution when there was arguable probable cause.

10

In *Hartman v. Moore*, the United States Supreme Court held a plaintiff in a retaliatory *prosecution* claim must show there was no probable cause to support the indictment. 547 U.S. 250, 265–66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). Later, in *Reichle v. Howards*, the Supreme Court held that it was not clearly established in the Tenth Circuit that there is "First Amendment right to be free from a retaliatory arrest that is supported by probable cause." 132 S.Ct. 2088, 2083 (2012) ("This Court has never recognized a First Amendment right to be free from retaliatory arrest that is supported by probable cause... [arresting officers] are thus entitled to qualified immunity."). The *Reichle* Court did not address whether a First Amendment retaliation claim may sound where there is probable cause. Since then, neither the Tenth Circuit nor the United States Supreme Court has established any such right. *See, e.g., Wilson v. Vill. of Los Lunas*, 572 F. App'x 635, 643 (10th Cir. 2014) (unpublished) (noting that *Howard* was reversed by *Reichle* without clearly establishing any right).

Plaintiff argues that whether there was arguable probable cause is not relevant to a First Amendment Retaliatory arrest claim. While Plaintiff may or may not be right that probable cause is not an element of a First Amendment retaliation claim, it is not clearly established that a First Amendment retaliatory arrest claim may sound where there is probable cause. *See, e.g., Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (it was not clearly established at the time of the defendant's arrest in June 2006 (six months before Marshall's arrest in the instant case) that an arrest supported by probable cause could violate the First Amendment); *Moran v. Cameron*, 362 F. App'x 88, 96–97 (11th Cir. 2010) (applying arguable probable cause standard in case of first amendment retaliation); *Mocek v. City of Albuquerque*, 813 F.3d 912, 931 (10th Cir. 2015)( in first amendment claim retaliation claim, stating "When Mocek was arrested, it was not clearly established that a plaintiff could show the requisite motive where his arrest was arguably

11

supported by probable cause. Mocek has not addressed Tenth Circuit or Supreme Court precedent compelling that conclusion."); *Marshall v. City of Farmington Hills*, 693 F. App'x 417, 426 (6th Cir. 2017) (holding that *Reichle* is dispositive of First Amendment retaliatory arrest claim); *see also Green v. Nocciero,* 676 F.3d 748, 751–52 (8th Cir. 2012) (arresting officers were entitled to qualified immunity on Fourth Amendment claim where activist was disruptive and refused to leave a public meeting and there was probable cause to arrest the activist for trespass under Missouri state law).

Moreover, *Howards v. McLaughlin*, 634 F.3d 1131, 1148 (10th Cir. 2011), *rev'd and remanded sub nom. Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012), once reversed, did not clearly establishes the law in the Tenth Circuit. The Supreme Court in *Reichle* explicitly declined to address whether an arrest supported by probable cause violated the First Amendment, and instead reversed on the ground that it was not clearly established in the Tenth Circuit before then. The Court finds that this reversal creates enough uncertainty that a reasonable officer could not pick up *Howard* and then *Reichle* and conclude that *Howard* clearly establishes law beyond debate. To do so, officers would have to analyze both cases and determine which portions of *Howards* are still good law. *See, e.g., Ross v. Balderas*, 2017 WL 2963885, at *4 (D.N.M. Mar. 16, 2017) (Kelly, J.) (for post-*Howards* arrest in 2016, Plaintiff must plead and prove absence of probable cause for underlying criminal charge); *Brewer v. Ross*, No. 1:15-CV-87-TC, 2018 WL 3128998, at *8 (D. Utah June 26, 2018) (in post-*Howards* arrest in September 2011, finding that law was not clearly established); *see also Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018) (in post-*Reichle* arrest, it was reasonable for officers to believe that arrest otherwise supported by probable cause would not violate plaintiff's First Amendment rights); *Moral v. Hagen*, 553 F. App'x 839, 840 (10th Cir. 2014) (unpublished) ("Only recently the Supreme Court

[ in *Reichle*]explained that it remains unsettled under current law whether an officer violates the Fourth Amendment by initiating an arrest for retaliatory reasons when the arrest itself happens to be supported, as an objective matter, by probable cause.")

Under these circumstances, the Court declines to find that a constitutional right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S.Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)). Generally, "existing precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Id.* A reasonable officer would not read *Howard* and *Reichle* determine that the relevant law is clearly established. To find it clearly established, an officer would have to discern a distinction that even the counseled parties in this case did not do in their briefs.

The relevant law in the Tenth Circuit is unclear and unsettled, and certainly not "beyond debate" for arrests post-2011. Therefore, the Court finds that Defendants Apodaca and Alirez are entitled to qualified immunity for the arrest and subsequent prosecution in June 2017.

3. <u>Plaintiff failed to carry burden that issuing trespass notices under these circumstances violated clearly established First Amendment law.</u>[2]

Plaintiff also alleges that Defendants violated his First Amendment rights by issuing trespass notices and ordering him to vacate 301 S. Foch St. **Comp., ¶ 63.** In a reply brief, Defendants argued that Plaintiff did not clearly establish that issuing trespass notices violated his First Amendment rights. The Court directed Plaintiff to respond to those arguments in a sur-reply.

None of Plaintiff's references in his sur-reply satisfy his burden of citing to clearly established law. Plaintiff cited to *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680 (1963).

---

[2] Plaintiff also appears to agree that the statute of limitations otherwise bars claims based on earlier trespass notices – but not the trespass notices issued in 2017. **Doc. 37, p. 3**.

In that case, the criminal defendants were convicted of breach of the peace following public protests on the streets. That case does not inform officers of when they can or cannot issue trespass warnings for the visitor center of a state agency. Plaintiff also cited to *Reed v. Town of Gilbert, Ariz.,* 135 S.Ct. 2218, 2226 (2015), but that case addressed a town's content-based regulation of signs. These cases cite to the broad general proposition that prohibits government from "abridging the freedom of speech." U.S. Const., Amdt 1. However, none of these cases address whether an officer violates the First Amendment by serving trespass notices at the request of the apparent custodian of the building. Plaintiff did not attempt to address the legal contours of this issue. Plaintiff's quote of *The Big Lebowski* mentions prior restraint, but Plaintiff otherwise did not attempt to brief the issue of prior restraint.

Plaintiff also cited to, and quoted from, a movie – *The Big Lebowski* – arguing that the First Amendment right is so clearly established that it is prevalent in pop culture. *See* **Doc. 37, p. 3.** The Court disagrees and does not find that any of the cases cited by Plaintiff "have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S.Ct. at 308. Therefore, the Court concludes that these references do not satisfy Plaintiff's burden of citing to clearly established law under the specific facts of this case.

**II.** **Supervisory and *Monell* claims against Defendant Alirez and T or C (Count III).**

Plaintiff asserts that Chief Alirez and the City of Truth or Consequences are liable under *Monell* for failing to properly train, supervise, and admonish officers in his department. Plaintiff alleges that Chief Alirez is a "policymaker" and created a climate that led officers under his supervision to believe they could act with impunity and violate civil rights. Defendants Alirez and the City of Truth or Consequences argue that because the law is not clearly established, they cannot be held liable under a supervisory theory or under *Monell*.

14

### A. Supervisor Liability for Chief Alirez as to First Amendment Violation.

To assert a § 1983 supervisory claim and overcome Defendant Alirez's assertions of qualified immunity, Plaintiff must establish that Chief Alirez, by virtue of a policy over which he possessed supervisory responsibility, caused a violation of Plaintiff's clearly established constitutional rights. *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (Plaintiff "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated [his] clearly established constitutional rights."); *see also Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015) (analyzing clearly established law as to supervisory liability claim). Here, since, the underlying First Amendment claim was dismissed on the clearly established prong, the Court dismisses the supervisory liability claim against Defendant Alirez.

### B. Municipal liability.

To the extent Plaintiff sues Chief Alirez in his official capacity, that is in reality a *Monell* claim against the City of Truth or Consequences. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Defendant Truth or Consequences only argues that the *Monell* claim against it should be dismissed, because the First Amendment right at issue was not clearly established.

Generally, in the Tenth Circuit, granting qualified immunity to individual officers based on the clearly established prong does not do away with a *Monell* claim. *Hinton v. City of Elwood*, 997 F.2d 774, 782-83 (10th Cir. 1993); *see also Medina v. City and County of Denver,* 960 F.2d 1493, 1499–1500 (10th Cir. 1992) (granting qualified immunity on clearly established prong does not relieve local government of *Monell* claim), *citing Watson v. City of Kansas City, Kansas,* 857 F.2d 690, 697 (10th Cir.1988). Here, the Defendants argued that the violations were not *clearly established*, and therefore the Court did not address whether there was a constitutional violation.

Because Defendant Truth or Consequences does not argue any other basis to dismiss the *Monell* claim, Defendant Truth or Consequences' request to dismiss the *Monell* claim is denied.

However, if Plaintiff nevertheless seeks to abandon his *Monell* claim, he should notify the Court and opposing parties. *See* **Doc. 37, p. 3.**

### III. Defendant Daniel Hicks is entitled to Qualified Immunity as to the First Amendment Claim (Count I).

#### A. Plaintiff's Allegations.

Plaintiff alleged that Defendant Hicks violated his First Amendment rights in two ways. First, Defendant Hicks requested a trespass order "based on prior incidents as a preventive measure". Second, Plaintiff alleges that Defendant Hicks signed a trespass order on May 11, 2016. Plaintiff did not allege the content of the notice or specify the scope of the trespass notice in his complaint. Plaintiff also does not allege that Defendant Hicks was involved in the arrest or prosecution.

Plaintiff alleged that he was protesting the use of a former T or C senior center as a visitor center for Spaceport America, a New Mexico state agency. The complaint details a long saga of Tor C officers responding to Plaintiff's presence at the visitor center, and either allowing him to stay, or asking him to leave, without taking any further action. But he also alleges that he (1) made other building occupants, including Larena Miller, feel unsafe, *Compl.* ¶ 12, (2) was soliciting and conducting business without a license, *id.* ¶¶ 12-13, 18-19, 21-24; (3) commenting that he was unhappy that the building was no longer being used as a senior center, *id.* ¶ 25-26, and (4) a volunteer at Geronimo Trial Scenic Byway was concerned about expensive items in the center being damaged or stolen and the police warned Plaintiff not to harass any visitors. For example, Plaintiff pled that he had previously approached visitors at the visitor center, handed out business

16

cards that said "Spaceport Tour Video Memory Services", and offered videos for a $10.00 donation.

B. **<u>Defendant Hicks' Defense of Qualified Immunity.</u>**

Defendant Hicks raised qualified immunity and specifically argued that the law was not clearly established.[3] The Court need not address whether there was a constitutional violation. For the reasons stated by Defendant Hicks, even assuming there was a constitutional violation, the Court concludes that Plaintiff failed to carry his heavy burden that the law was clearly established.

Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal citations and quotation marks omitted). "Cleary established law should not be defined at a high level of generality…the clearly established law must be "particularized" to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quotation marks and internal citations omitted). Under the *White v. Pauly* analysis, the Supreme Court requires courts to identify a case where a government official acting under similar circumstances as Defendant Hicks was held to have violated the First Amendment. *Id.*

Plaintiff bears the burden of citing to case law and articulating the clearly established right he claims had been violated. *See Thomas v. Durastanti,* 607 F.3d 655, 669 (10th Cir. 2010); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to

---

[3] Defendant Hicks is the CEO of Spaceport America, a New Mexico state governmental entity. Plaintiff does not dispute that Defendant Hicks is an individual entitled to assert the defense of qualified immunity.

qualified immunity." (internal quotation marks omitted)). In analyzing clearly established law, the Court looks at the cases cited by Plaintiff to determine whether those cases can serve as clearly established law. *See, e.g., A.M. v. Holmes*, 830 F.3d 1123, 1154 (10th Cir. 2016) (granting qualified immunity where "neither of Plaintiff's cited sources can serve as the clearly established law governing this First Amendment retaliation claim.")

Here, Plaintiff cites to cases which are not factually on point or are cited for general statements of law which would not make a reasonable official aware that he or she was violating Plaintiff's First Amendment rights. Plaintiff cites to no cases that apply the complex First Amendment analysis to the facts of this case, i.e., that it was clearly established that issuing a trespass notice barring Plaintiff for his alleged conduct from a state agency visitor center would violate Plaintiff's First Amendment rights. Therefore, those cases cited by Plaintiff do not clearly establish that Defendant Hicks would violate Plaintiff's First Amendment rights by having a trespass notice served on him.

For example, in an attempt to satisfy his burden, Plaintiff cited to *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). In that case the Tenth Circuit affirmed dismissal of a First Amendment retaliatory prosecution claim because probable cause supported the charges filed against Plaintiff. Here, Defendant Hicks was not alleged to have been involved in the arrest or prosecution of Plaintiff, and that case would not have placed Defendant Hicks on notice that he could violate Plaintiff's First Amendment rights by signing the trespass notice. Plaintiff also cites to a number of California state cases that the "presumptively protected status of peaceful picketing activities" is a well-established right. **Doc. 26, p. 10-11.**

Plaintiff also cites to the First Amendment retaliation elements. *Nielander v. Bd. Of Cnty Comm'rs,* 582 F.3d 1155, 1165 (10th Cir. 2009) *and Smith v. Plati*, 258 F.3d 1167, 1176-77 (10th

Cir. 2001). Again, that law is too general to identify to a reasonable official under these circumstances that his or her conduct was unlawful.

Most of Plaintiff's response ably argues why a constitutional violation occurred. While a constitutional violation may or may not have occurred, Plaintiff did not satisfy his burden of citing to cases that make it apparent to a reasonable government official that his conduct was unlawful.

**CONCLUSION**

The Court finds and concludes that Defendants Apodaca and Alirez are entitled to qualified immunity on the First Amendment claim (Count I). Defendant Alirez is also entitled to qualified immunity as to the supervisory liability claim (Count III). However, the *Monell* claim (Count III) against the City of Truth or Consequence remains. Moreover, Defendant Hicks is entitled to qualified immunity on Count I. Finally, Count II, which was not addressed in any of the motions to dismiss, remains.

**IT IS THEREFORE ORDERED** that the Truth or Consequences Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim and Lack of Jurisdiction **(Doc. 13)** is hereby **GRANTED IN PART** for reasons described in this Memorandum Opinion and Order; and

**IT IS FURTHER ORDERED** that the Defendant Hicks' Motion to Dismiss **(Doc. 18)** is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE